GEORGE PATENAUDE, Respondent, v. NORMAN FORTIN et al., Appellants.

DAIRY EXPRESS, INC., Respondent, v. NORMAN FORTIN et al., Appellants.

FORT EDWARD EXPRESS CO., INC., Respondent, v. NORMAN FORTIN et al., Appellants.

Third Department, July 24, 1957.

*Robert J. Feinberg, Harold A. Jerry* and *Norman L. Harvey* for appellants.

*James A. FitzPatrick* for respondents.

FOSTER, P. J.  These are appeals from judgments entered in negligence actions after a jury trial in the Supreme Court, Clinton County.  In the personal injury case the jury returned a verdict of $75,000.

Respondent Patenaude, who sued for personal injuries, operated a tractor-trailer, the tractor of which was owned by the respondent Dairy Express, Inc., and the tank trailer by the respondent Fort Edward Express Co., Inc. The tank trailer carried a load of gasoline that had been loaded at Plattsburgh, New York and was destined for delivery at Rouses Point. Appellant Fortin was the owner of a smaller vehicle known as a Chevrolet pickup truck, that carried a load of bread and was being operated at the time by the appellant Richard.

Before any accident occurred both vehicles were traveling north on a State highway known as Route 9B, the bakery truck in the lead with the oil tractor-trailer following some distance in the rear. When they reached an intersection, where a road known as the Rapid Road intersects Route 9B from the west and a road known as the Stetson Road from the east, at or near the hamlet of Cooperville, the respondent Patenaude attempted to pass the bakery truck with his tractor-trailer. It was his claim that as he did so the appellant Richard turned the bakery truck to the left without giving any warning signal. Apparently there was some contact between the two vehicles, but if so, Patenaude was not aware of it. He said that he steered his tractor-trailer farther to the left as Richard began to turn but could not control it because his wheels slipped on ice and it crashed into a tree. He asserted that he sounded his horn three or four times before he attempted to pass. Patenaude also claimed that he did not see any intersection sign as he approached the scene of the accident, and did not know that an intersection was in front of him.

Appellant Richard's account of the accident was quite different. He said that when he reached the intersection sign south of the intersection he looked in the mirror on his vehicle to see if there was any traffic in his rear and saw none; that he then turned on his left signal light to indicate that he was about to make a left hand turn; that he also looked again, opened his left door and put out his hand. He did not hear any horn sounded and was unaware of the presence of the tractor-trailer until his vehicle was struck by it as he was on a 40-degree left turn into Rapid Road. His truck was damaged to some extent, the left front fender being jammed in, the rear mirror broken and a chunk torn out of the left rear corner.

Although the existence of an intersection sign south of the crossing was probably a question of fact there was strong proof that such a sign was on the east side of Route 9B a few hundred feet south of the intersection. At the intersection itself there was a broken white line in the center of the main highway.

The trial of these cases presented sharply disputed questions of fact, particularly as to whether Patenaude sounded his horn as he attempted to pass the bakery truck, and whether the driver of the latter gave any warning of his intention to turn to the left in the intersection. If these matters were all that were involved we would not be disposed to interfere with the verdicts of the jury. There was evidence both ways on these issues, affirmative and negative, and it was for the jury to resolve the conflict. However we are constrained to the belief that the issue of contributory negligence on the part of Patenaude was inadequately presented to the jury by the charge of the Trial Justice.

In his charge to the jury the Trial Justice had this to say: " There is evidence here that some distance south of this intersection there is an intersection sign placed there by the highway commission of the State of New York, indicating to people using the highway that there was that intersection ahead of them. There was a broken line on the highway at the intersection, and, in so far as the evidence in this case is concerned, at all points shown on these pictures the line was a broken line. A broken line indicates that you may pass. A solid line indicates, of course, as you people who drive automobiles know, you cannot pass." This language was not qualified or elaborated on in any way either before or after it was given to the jury and it may well have created an impression in the minds of the jurors that the broken line gave Patenaude an absolute right to pass, without any imputation of negligence and irrespective of other factors such as the existence of an intersection sign and the intersection itself. This is an erroneous conception we believe but apparently the Trial Justice had this opinion. This is indicated by his remarks on the motion to dismiss. He said, referring to section 67 of the Vehicle and Traffic Law: " The law you are talking about doesn't apply here. If he is negligent, he is negligent because he didn't see the sign indicating the intersection; if he says he didn't know there was an intersection there, then he is not guilty of any negligence for attempting to pass at an intersection." It should be noted that these remarks were not made in the presence of the jury and are not a part of the charge. Nevertheless the charge on this phase begged or at least beclouded the issue as to contributory negligence. A motorist traveling upon the highways of this State is bound to make a reasonable use of his vision to ascertain the existence of warning signs erected for his own protection and the protection of others. He cannot escape this duty by simply saying he did not see any signs, and in the absence of any other explana-

tion a jury may find him negligent. In these cases Patenaude offered no explanation as to why he did not see the intersection sign which the proof strongly indicated, not only existed, but was plainly visible some distance south of the intersection as one approached from that direction. He was bound to see what, in the exercise of reasonable care, he should have seen; and if the triers of the facts found that he ought to have seen the sign they could also have found that he knew or ought to have known that he was nearing an intersection.

If the jury found he was charged with knowledge that he was approaching an intersection, irrespective of whether he actually saw the sign, then the question would arise as to whether he was bound by the provisions of section 67 of the Vehicle and Traffic Law. That section requires the operator of a motor vehicle who is approaching an intersection where his view is obstructed to slow down and give a timely warning of his approach. Whether the plaintiff driver's view was obstructed is a question of fact for the jury to resolve. If his view was not obstructed then the statutory directive was not applicable, although, of course, and irrespective of statute law, plaintiff driver was required to exercise reasonable care and caution in attempting to pass another vehicle in the intersection. On the other hand, if his view was obstructed, and assuming that he was charged with knowledge of the intersection, then he was required by the statute to slow down and give a timely warning of his approach. In that situation the jury had the right and duty to determine whether the statute was violated, and if so, whether such violation was a proximate cause of the accident. We cannot say as a matter of law, irrespective of the factual situation, that the statute quoted had no application on the theory that it probably was designed to prevent collisions of motor vehicles entering or crossing an intersection. If the plaintiff driver had slowed down instead of accelerating his speed in an attempt to pass the bakery truck it seems quite obvious that the accident would not have occurred.

We do not intend by this discussion to make any dogmatic assertions as to facts that are within the province of a jury to find. We simply point out these matters to indicate the necessity for a clear, careful and comprehensive charge to the jury on the subject which is directly related to the issues of proximate cause and contributory negligence.

It is true that the Trial Justice did, in his charge to the jurors, state that they were not bound by the testimony of a witness who said he looked and did not see, but he did not relate this general language to the failure of Patenaude to see the

intersection sign if it existed, and this in our view was one of the crucial points in the case. The jury might have found that this failure was the beginning of a chain of events, and possibly one of the proximate causes, that led to the subsequent disaster. Whether a jury would have so found is of course a matter of speculation but the appellants at least were entitled to have this phase of the incident and its possible significance clearly and unequivocally presented to the jury.

Appellants have attempted to make a point that they were deprived of a fair and impartial trial by comments made by the Trial Justice during the course of the trial. We have examined the comments cited and are not persuaded that they are as serious as appellants contend. In nearly every long and closely contested trial, and the one under review was both long and closely contested, remarks are often made that might have better been left unsaid, sometimes by the court, sometimes by counsel, and sometimes by both. In these cases however we think the record indicates that the Trial Justice had no bias, and expressed none, against any party, and that he was merely striving to expedite the trial and probe for the truth.

The judgments should be reversed and a new trial directed, with costs to abide the event.

BERGAN, HALPERN and GIBSON, JJ., concur.

Judgments reversed, on the law and the facts, and a new trial directed, with costs to abide the event.